# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARK A. WEISS,

    Plaintiff,

  v.                                                                                                     Case No. 15-CV-1165

WAYNE BARRIBEAU,
DR. THOMAS MICHILOWSKI,
DR. JOSE ALBA,
JANE DOE, nurses at Wisconsin Resource Center,
JOHN DOE, two officers at Racine Correctional Institution,
CAROLYN PLANK, and
JOHN DOE, nurse or doctor at Racine Correctional Institution,

    Defendants.

## DECISION AND ORDER

The *pro se* plaintiff, Mark Weiss, is a Wisconsin state prisoner. He is proceeding on claims that the defendants failed to protect him from an assault from his cellmate in violation of the Eighth Amendment and that he did not receive proper medical care for injuries he received during the assault in violation of the Eighth Amendment and Wisconsin state law. Weiss has filed two motions for summary judgment as well as a motion to appoint counsel and motion for an evidentiary hearing, and the defendants have filed a motion for summary judgment. For the following reasons, the Court will deny Weiss' motions for summary judgment, to appoint counsel, and for an evidentiary hearing; grant the defendants' motion for summary judgment; and dismiss the case.

### PROCEDURAL BACKGROUND

This case was removed to federal court from Racine County Circuit Court on September 29, 2015, and assigned to Judge Charles N. Clevert, Jr. Judge Clevert screened the second amended

complaint and allowed Weiss to proceed on the following claims: an Eighth Amendment claim based on allegations that, while incarcerated at the Racine Correctional Institution, defendants Officer Barribeau and Sergeant Plank failed to protect Weiss from his cellmate who allegedly broke Weiss' ankle as well as Eighth Amendment and state law negligence claims against John Doe officers and John Doe nurse or doctor at Racine Correctional Institution and Dr. Jose Alba, Dr. Thomas Michilowski, and Jane Doe nurses at the Wisconsin Resource Center based on allegations that these defendants did not treat his broken ankle. ECF No. 14 at 3.

On July 14, 2016, Judge Clevert granted the defendants' motion for summary judgment for failure to exhaust administrative remedies. ECF No. 44. The Court of Appeals for the Seventh Circuit reversed that decision on May 1, 2017, and remanded the case to the district court. *See Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017). The appeals court determined that there was a genuine issue of material fact as to whether administrative remedies were available to Weiss because of, in part, "the questionable state of his mental stability at the time." *See id.*

Upon remand, the case was reassigned to this Court. The Court recruited a *pro bono* attorney for Weiss to provide assistance in the evidentiary hearing. ECF No. 72. The defendants ultimately filed a motion to withdraw the exhaustion defense, which the Court granted on September 18, 2017. ECF Nos. 76–77. On October 4, 2017, the Court held a telephone status conference to address further scheduling. At this conference, the Court granted Weiss' *pro bono* attorney's motion to withdraw as counsel, since counsel was recruited only to represent Weiss on the exhaustion issue. ECF No. 80. The Court and the parties discussed the nature of the case as well as Weiss' medical treatments. Weiss requested *pro bono* counsel be appointed moving forward, and the Court stated

it would not recruit counsel at that time but would take Weiss' request under advisement. The Court set a discovery deadline of April 4, 2018, and a dispositive motion filing deadline of May 4, 2018.

Since the October 4, 2017, status conference, Weiss has filed two proposed amended complaints attempting to raise claims that were dismissed in the screening order and seeking to amend his request for relief. The Court struck both of these pleadings. ECF Nos. 84, 87. Weiss also filed a motion for summary judgment. But because his motion did not include identifiable material facts or a memorandum of law in compliance with the local rules, the Court denied without prejudice Weiss' summary judgment motion. ECF No. 79. Weiss also filed a motion to compel in which he moved for a transcript of his deposition, which the Court denied. ECF No. 96. Weiss later filed two more motions for summary judgment (ECF Nos. 89, 97) as well as a motion to appoint counsel and for an evidentiary hearing (ECF No. 109), and the defendants have filed a motion for summary judgment (ECF No. 98). These motions are ready for resolution.

## FACTUAL BACKGROUND[1]

Weiss was housed at Racine Correctional Institution (RCI) until April 8, 2014, when he was transferred to the Wisconsin Resource Center (WRC). At all times relevant to this lawsuit, defendants Officer Wayne Barribeau and Sergeant Carolyn Plank were employed by the Wisconsin Department of Corrections at RCI. Defendants Dr. Jose Alba and Dr. Thomas Michilowski were employed by the Wisconsin Department of Health Services at WRC.

Weiss' claims stem from a February 26, 2014 altercation between Weiss and his cellmate, Timothy Burdick, and Weiss' resulting injuries. Weiss claims that three or four days prior to the

---

[1] This section is taken from the defendants' proposed findings of fact (DPFOF). ECF No. 100. Weiss did not file a response to the defendants' proposed findings of fact and he did not file his own proposed findings of fact.

incident, he reported to certain defendants that he wanted to be moved away from Burdick. According to Weiss, Burdick was irritated by the fact that Weiss would turn Burdick's alarm clock off—which Burdick often ignored—so that Weiss would not have to listen to it. Although Weiss contends Burdick told him they were going to fight one way or the other, the defendants maintain that Weiss never complained of a specific threat that Burdick made to him about hurting him in a certain way at a certain time. Weiss concedes that he had never been assaulted by Burdick prior to the February 26, 2014 incident, that it is common for cellmates to make inappropriate comments to each other, and that this type of banter did not usually lead to an actual fight. He also believed he could stand his ground to a certain extent against Burdick. DPFOF ¶ 11.

On February 26, 2014, Burdick threw a plastic chair at Weiss. Weiss then left his cell and reported the incident to Barribeau, who was located at the officer's station approximately six cells away. Barribeau walked Weiss back to his cell to investigate. Barribeau attempted to talk to Burdick, but Burdick was non-responsive and appeared to be asleep. Barribeau then returned to the officer's station. After Barribeau left, Weiss claims Burdick "all of a sudden sprung up, jumped out of the bed, grabbed [Weiss'] hair, and started pulling [him] around the room, ripping out [his] hair." DPFOF ¶ 28. The fight continued, and Weiss shoved Burdick through the cell door. Officers responded, broke up the fight, and escorted both Weiss and Burdick to the Restrictive Housing Unit (RHU). Neither Plank nor Barribeau were involved in breaking up the fight or escorting the inmates to RHU.

Once he was transported to RHU, Weiss told officers that he believed he broke his ankle. He claims he also suffered a "back disc" injury from the fight. According to Weiss, medical

personnel advised him that "it just looked sprained." DPFOF ¶ 33. Weiss claims he requested an x-ray but his repeated requests were denied.

Nurse Travis Brady (not a defendant) examined Weiss after the fight. Brady noted Weiss' ankle was swollen but did not observe bruising or evidence of dislocation or malalignment. After consulting with the doctor, Brady gave Weiss an order for Ibuprofen and Tylenol and directed Weiss to rest the ankle and use an ace wrap for compression. Brady saw Weiss on March 25, 2014, in response to Weiss' health services request asking for an x-ray of his ankle. Brady examined Weiss and noted that the ankle was no longer swollen, was not bruised, and had full range of motion and that Weiss was not limping. Brady did not order an x-ray, as the medical evidence suggested that the ankle had healed.

Weiss transferred to WRC on April 8, 2014. At his intake interview, Weiss complained to Dr. Alba about his right ankle. Weiss also reported ankle issues to Dr. Michilowski. When Weiss reported ankle problems to Dr. Michilowski, Dr. Michilowski sent Weiss for further imaging. Weiss concedes that he does not believe Dr. Michilowski did anything wrong regarding the care and treatment of his injuries. Dr. Alba ordered an x-ray of Weiss' ankle, and an August 11, 2014 x-ray revealed a "healing right ankle fracture." Dr. Gaanan saw Weiss at a follow up appointment and ordered physical therapy. Weiss claimed the physical therapy was helpful, and he was told that his ankle was healing properly. Weiss contends he continues to have ankle pain every morning but is able to get around "for the most part" after he stretches. DPFOF ¶ 65. Although Weiss believed he also suffered a bulging disc from the fight, MRI imaging revealed only mild arthritis of the lumbar spine. No healthcare provider has concluded the bulging discs were caused by the fight.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment *must* "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

**I. Recruitment of Counsel**

After the motions for summary judgment were fully briefed, Weiss filed a motion to appoint counsel. ECF No. 109, at ¶ 12. This was actually a renewal of his earlier oral motion for appointment of counsel that the Court addressed at a status/scheduling telephone conference on October 4, 2017. The Court denied Weiss' request at that time but indicated it would give further consideration to his request as the case proceeded. Upon further consideration, I decline Weiss' request that I recruit counsel to represent him.

Prison inmates do not have a right to court-appointed counsel in federal civil litigation, but an indigent civil litigant may ask the district court to request an attorney to represent the litigant *pro*

*bono*. 28 U.S.C. § 1915(e); *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). In *Pruitt*, the court held that in considering such a request, a district court should consider: (1) whether the plaintiff has made a reasonable attempt to obtain counsel and (2) whether the plaintiff appears competent to litigate the case himself, given the difficulty of the particular case at hand. *Id.* at 654.

As an initial matter, the record shows that Weiss made a reasonable effort to recruit counsel on his own. ECF No. 13. It is therefore the dual inquiry called for by the second consideration that is at issue. To be sure, Weiss like any prisoner, or any lay person for that matter, would benefit from having an attorney represent him. But of course that is not the test. Otherwise, district courts would be required to recruit attorneys in every case brought by a *pro se* plaintiff. The question is whether Weiss appears competent to litigate the case himself, given its difficulty. Though Weiss was receiving psychotropic medication at one time, the Court has had at least two telephone conferences at which he has appeared over the course of the case. At each, Weiss seemed well aware of what was going on and capable of fully communicating with the Court. This was especially true at the October 4, 2007 conference at which the Court had Weiss describe his claims in detail. Weiss has also filed several motions of his own and seems quite capable of expressing himself in writing. As far as competence is concerned, the Court finds that Weiss is above average in terms of his ability to communicate with the Court and his knowledge of the law.

As for the complexity of the case, to a nonlawyer, any case, especially one involving medical care, may seem complex. But this case has two separate and distinct claims, both of which depend primarily, almost exclusively, on Weiss' own testimony. The first claim is that two correctional officers failed to protect Weiss from his cellmate, despite his prior statements to the officers that his cellmate was threatening him. Weiss explained this claim in detail at the October 4, 2017 telephone

conference. The second claim involves Weiss' allegation that the other defendants, both doctors at a different institution, were deliberately indifferent, or at least negligent, in their diagnosis, care, and treatment of his ankle, which was later found to have a healed fracture. Although Weiss assessed his own damages at $5.2 million, he appeared to have few, if any, residual effects from the injuries allegedly caused by the defendants. Given these allegations and Weiss' own description of his case, I do not find it so complex as to require recruitment of counsel under the *Pruitt* standard. Accordingly, Weiss' motion for appointment of counsel is denied.

**II. Plaintiff's Motions for Summary Judgment**

Weiss filed two motions for summary judgment in this case. The Court will deny Weiss' motions for summary judgment for failure to comply with this Court's local rules. In addition to Federal Rules of Civil Procedure 7 and 56, Civil Local Rule 56 governs the form that motions for summary judgment must take when submitted to this Court. This rule includes establishing that motions for summary judgment must identify material facts and submit a memorandum of law. Civil L.R. 56(b)(1). Weiss' motions do not take this form. While his motions reiterate his claims and include citations to case law, Weiss does not cite to identifiable material facts supported by the record. Therefore, Weiss' motions will be denied for failing to comply with the local rules.

**III. Defendants' Motion for Summary Judgment**

**A. Failure-to-Protect Claim Against Barribeau and Plank**

Weiss alleges defendants Barribeau and Plank failed to protect him from the February 26, 2014 altercation with his cellmate. While prison officials are required to protect inmates from one another, a constitutional violation does not occur "every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To recover on a failure-to-protect

claim, Weiss must demonstrate that the officials were deliberately indifferent to a sufficiently serious risk of harm. "A claim that a prison official was deliberately indifferent to such a risk has both an objective and a subjective component. First, the harm to which the prisoner was exposed must be an objectively serious one." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (internal citations omitted). A beating at the hands of a fellow prisoner constitutes an objectively serious harm. *Id.* (citing *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005)).

Second, "the subjective prong of the deliberate indifference claim . . . requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* (internal quotations omitted). "Negligence, gross negligence, or even 'recklessness' . . . is not enough." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted). Generalized, vague, or stale concerns about one's safety generally "will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas*, 798 F.3d at 480–81. Prisons are, after all, "dangerous places often full of people who have demonstrated aggression." *Dale*, 548 F.3d at 569. Officers must often "discriminate between serious risks of harm and feigned or imagined ones, which is not an easy task given the brief time and scant information available to make each of the many decisions that fill every day's work." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). As a result, a prisoner must typically make a complaint "that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant." *Gevas*, 798 F.3d at 481.

In this case, there is no evidence that any specific, serious, credible threat of imminent serious harm was made known to any defendant prior to the altercation which would have warranted

separating Weiss and Burdick. It is undisputed that prior to the incident, Weiss asked Plank and Barribeau to move him from his cell assignment because Burdick had made threats to him. On the day of the incident, Weiss went to the officer's station after Burdick threw a plastic chair at him and requested to be removed from his cell. Barribeau investigated the complaint and, after seeing Burdick apparently sleeping in the cell and seeing no serious injuries to Weiss, Barribeau returned to the officer's station and did not move Weiss. There is no evidence to suggest that after Barribeau investigated Weiss' report of the first incident, either defendant knew that a second altercation would occur. While Weiss made a vague report that he believed Burdick was going to "escalate into something else," he did not complain that another attack was likely or imminent. Weiss Dep. 20:17, ECF No. 103-1 at 5. Weiss' vague and generalized concerns about his safety do not adequately support an inference that the defendants had actual knowledge or an awareness of a risk of harm to Weiss. Therefore, summary judgment on Weiss' failure-to-protect claim is appropriate.

### B. Deliberate Indifference Claim Against Dr. Michilowski and Dr. Alba

The defendants contend Weiss cannot establish that defendants Dr. Alba and Dr. Michilowski were deliberately indifferent to his serious medical needs. A plaintiff may prevail on a claim for relief under 42 U.S.C. § 1983 by showing that he was deprived of a federal right by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "The Supreme Court has interpreted the Eighth Amendment's prohibition of cruel and unusual punishment, incorporated through the Fourteenth Amendment, as imposing a duty on states to provide medical care to incarcerated individuals," and prison officials violate that duty if they are deliberately indifferent to a prisoner's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "A prison official may be liable for deliberate

indifference only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To succeed on a deliberate indifference claim, a prisoner must therefore prove that he "suffered from '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Id.* (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

Deliberate indifference requires more than negligence or even gross negligence; an inmate alleging deliberate indifference must "show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). This means that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837). "Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estelle*, 429 U.S. at 107); *see also Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016). Although "a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference," a plaintiff succeeds in proving the second prong only if the prison official's conduct was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards*, 478 F.3d at 831 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Based on the factual record, Weiss cannot satisfy the subjective prong of the deliberate indifference test with respect to defendants Dr. Michilowski and Dr. Alba. The record is minimal as to Weiss' interactions with Dr. Michilowski and Dr. Alba. Though Weiss alleges that he

continued to have ankle and back pain after he was transferred to WRC, Dr. Michilowski and Dr. Alba examined him, noted his complaints, and referred him for diagnostic testing. The x-ray Dr. Alba ordered revealed Weiss had a "healing right ankle fracture." Weiss was then referred to physical therapy and was told at physical therapy that his ankle was healing correctly. There is no support in the record for finding that Dr. Michilowski or Dr. Alba failed to treat Weiss or provided inappropriate treatment. The Court will therefore grant the defendants' motion for summary judgment as to Weiss' deliberate indifference claims against Dr. Alba and Dr. Micholowski.

### C. State Law Negligence Claims Against Dr. Michilowski and Dr. Alba

Weiss has also alleged state law negligence claims against Dr. Michilowski and Dr. Alba. Generally, when federal claims drop out of a case, federal courts decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) (noting that the rule is dismissal unless state claims are frivolous or a "no brainer"). Nothing in this case suggests that the presumption should be ignored. Accordingly, Weiss' state claims against Dr. Michilowski and Dr. Alba will be dismissed without prejudice so that they may be pursued in a state forum.

### D. Doe Defendants

In the Screening Order, Judge Clevert directed Weiss to use discovery to identify the Doe defendants and advise the Court he was unable to do so. ECF No. 14 at 4. On February 5, 2016,

about a week after the Screening Order was entered and before the start of discovery, Weiss filed a letter stating that he had been unable to identify the Doe defendants. ECF No. 15. On March 18, 2016, Judge Clevert issued a scheduling order, which ordered that Weiss could file motions to amend his pleading to add parties, including the identification of the Doe defendants, by May 20, 2016, and that if the Doe defendants were not identified by this date, his claims against them would be subject to dismissal. ECF No. 19. Less than a month later, Judge Clevert stayed discovery pending a resolution of the defendants' motion for summary judgment on exhaustion grounds. ECF No. 40.

Upon remand from the Seventh Circuit, the Court reopened discovery for six months, allowing Weiss the opportunity to conduct discovery to identify the Doe defendants. Weiss does not appear to have pursued discovery to identify these defendants, and he has not suggested that he had difficulty identifying them. The Court also notes that Weiss did not include the Doe defendants in the captions of his numerous filings since the Court reopened discovery. *See* ECF Nos. 94, 97, 107, 109. As such, the Court concludes that Weiss has abandoned his claims against the Doe defendants, and his claims against them will be dismissed.

## CONCLUSION

For the reasons set forth above, Weiss' motions for summary judgment (ECF Nos. 89, 97) and for appointment of counsel and an evidentiary hearing (ECF No. 109) are **DENIED**. The defendants' motion for summary judgment (ECF No. 98) is **GRANTED** and the case is ordered dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this  18th  day of September, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court